GUS I. ARNOLD, ADMINISTRATOR, v. ADELE E. LEONARD et al.

No. 4107.   Decided June 10, 1925.

(273 S. W., 799).

1.—Wife's Separate Property—Constitution—Legislature.

The Constitution (Art. 16, Sec. 15) in declaring all owned by the wife before marriage or acquired after by gift, devise, or descent to be her separate property, furnishes the sole measure of her separate estate, and the Legislature can neither add to nor take away from this.   (Pp. 539, 540).

2.—Same—Constitutional and Statutory Construction—Inclusio Unius.

Where the Constitution specifies the circumstances under which a right is to be acquired there is an implied exclusion of others, the rule being the same as that for the construction of statutes; and this implies a prohibition against legislative power to add thereto.   (P. 540).

3.—Same—Legislative Construction.

In declaring by statute the increase of lands and slaves separately owned to be separate property, the Legislature did not assert a right to add to the constitutional definition of such property.   As to slaves (prior to emancipation) statutes and decisions followed the general principle of the law of slavery in the United States by which the child became the property of the owner of its mother.   As to land, the statute was held to make neither crops nor rents therefrom separate property, but only the enhancement in the value of the land.   As to neither was there an extension of the right beyond the effect of the Constitution itself.   Moreover, repeated reenactment by statute of the definition of separate property as given by the Constitution showed the Legislature did not consider that it had attempted to add to it.   (Pp. 540-542).

4—Wife's Separate Estate—Real Property—Rents and Revenues.

The statute declaring rents and revenues derived from the wife's separate real estate to be her separate property (Act of April 4, 1917, Laws, 35th Leg., ch. 194, p. 436; Act of March, 1921, Laws, 37th Leg., ch. 130, p. 251; amending Rev. Stats., art. 4621) were beyond the power of the Legislature to enact, and are invalid.   (P. 542).

5.—Constitutional Law—Caption of Act.

Where the caption of an Act of the Legislature, though stating its purpose to be to amend a certain section of the statutes, proceeds also to state the nature of the proposed amendment, an enactment foreign to the purpose as so stated is invalid because not disclosed by the caption, or, as in the cases here considered, completely disguising the purpose of the Act.   (Pp. 543).

6.—Same—Wife's Separate Property.

The caption of the Act of April 4, 1917, Laws, 35th Leg., ch. 194, p. 436, and that of the Act of March, 1921, Laws, 37th Leg., ch. 130, p. 251, show no purpose of making rents and revenues of the wife's separate lands her separate estate, and so much of such statutes as attempts so to do is invalid (Const., art. 3, sec. 35).   (Pp. 542, 544).

7.—Community Property—Control by Wife—Liability for Debts.

The Legislature, having the same power to place control and disposition of community property in the hands of the wife as of the husband, may

exempt same from liability for husband's debts. Accordingly it may give the wife control of rents derived from her separate lands, leaving them still community property, and exempt same from liability for debts created by the husband. (Pp. 544, 545).

#### 8.—Same.

The Act of March 31, 1913, Laws, 33d Leg., ch. 32, p. 61 (amending Rev. Stats., art 4621, and reenacted by the further amendments of said article by Act of April 4, 1917, and Act of March, 1921) so far as concerns its exemption of rents from the wife's separate land from liability for community debts created by the husband, was separable from the invalid provisions of such Acts seeking to render such rents her separate property, and was a valid exercise of the power of the Legislature. (Pp. 544, 547).

#### 9.—Cases Discussed etc.

Ezell v. Dodson, 60 Texas, 332; Koy v. Schneider, 110 Texas, 378; Dickson v. Strickland, 114 Texas, 176; Red River Natl. Bank v. Ferguson, 109 Texas, 290; Whitney Hardw. Co. v. McMahan, 111 Texas, 245; Scott v. Scott, 170 S. W., 273; Tannehill v. Tannehill, 171 S. W., 1051; approved and followed. Howard v. York, 20 Texas, 672, limited. (Pp. 540-547).

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Galveston County.

*Stewarts* and *Williams & Neethe*, for appellant.

The Constitution having defined the separate property of the wife, and having in terms directed the enactment of laws to clearly define the rights of the wife in relation to the property held in common with her husband, it is beyond the power of the Legislature to enlarge the separate estate of the wife beyond the definition contained in the Constitution, and to convert community property into the separate estate of the wife. Const., art. 16, sec. 15; De Blane v. Lynch, 23 Texas, 25; Cartwright v. Cartwright, 18 Texas, 626; Cox v. Miller, 54 Texas, 16; Parks v. West, 102 Texas, 16; Houston & T. C. R. Co. v. Texas, 95 Texas, 527; Higgins v. Bordages, 88 Texas, 467; Timmins v. Long, 58 Texas, 558; Cabell v. Menczer, 35 Texas, 207; Conner v. Hawkins, 66 Texas, 639; Cleveland v. Cole, 65 Texas, 402; Ezell v. Dodson, 60 Texas, 331; Cooper v. Yoakum, 91 Texas, 391; Supreme Council v. Anderson, 83 S. W., 207; Cohen v. State, 110 S. W., 66; 36 Cyc., 1119.

On insufficiency of captions of statutes in question. Ward Cattle & Past. Co. v. Carpenter, 109 Texas, 105; Holman v. Cowden, 158 S. W., 571, Rogers v. Tobias, 235 S. W., 805; Lewis' Sutherland on Stat. Construction, sec. 117, p. 198.

*P. A. Drouilhet*, for appellees.

On Constitutional Construction. Lytle v. Halff, 75 Texas, 128; Brown v. City of Galveston, 97 Texas, 1; Life Ins. Co. v. City of Austin, 112 Texas 1 (9).

On Construction of Article 4621. Rudasill v. Rudasill, 219 S. W., 843; Maxwell v. Jurney, 238 Fed., 566; Grosman v. Union Trust Co., 228 Fed., 615; Union Trust Co. v. Grosman, U. S. Sup., 62 L. Ed., 368; Armstrong v. Turbeville, 216 S. W., 1105; Texas Lumber & Loan Co. v. First Nat'l. Bank, 209 S. W., 811; Scott v. Scott, 190 S. W., 273; Red River Nat'l Bank v. Ferguson, 206 S. W., 925. The wording of the constitution is·''all the property, both real and personal of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise or descent, shall be her separate property'' etc. This can only be construed to mean that the framers of the constitution intended to lay down the rule that that particular class of property should be and should remain separate property, without, however, intending to set a limit to what should be, in the wisdom of the legislature, further designated as her separate property. There is a broad distinction between declaring' specific property separate property of the wife and undertaking to enumerate what the separate property of the wife shall consist of. The latter may well exclude any other addition whereas in the former instance no construction, however strained, can produce the same result.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Certified Questions from the Honorable Court of Civil Appeals of the First Supreme Judicial District of Texas, in an appeal from the District Court of Galveston County, Texas.

The Court of Civil Appeals states the nature and facts of this case and the question which the Supreme Court is requested to determine as follows:

''The suit was brought by the appellee, Mrs. Adele E. Leonard, a married woman, joined pro forma by her husband, St. Clair Leonard, for an injunction to restrain the appellant, Gus I. Arnold, as administrator of· the estate of Gus Schultz, deceased, from seizing or attempting to subject certain rents and revenues from a number of pieces of real estate in the City of Galveston, all being the separate estate of the wife, Mrs. Adele E. Leonard, to the payment of a judgment owned and held by the appellant against St. Clair Leonard, the husband.

''The facts alleged in the bill for injunction were· agreed to be true by both parties to the suit, and showed, as recited, that all the real property involved is owned by Mrs. Adele E. Leonard, the wife, as her separate estate; that the judgment held and owned by the appellant in his capacity as administrator of the estate of Schultz was against the husband, St. Clair Leonard, and represented a community indebtedness; that in these circumstances the administrator was seeking, by threatening the issuance of .writs of garnishment on the judgment against various renters and tenants of Mrs. Leonard's separate real estate, to subject the rents and revenues thereof to the payment of this judgment.

"The appellant, in the trial court, answered the petition and prayer for an injunction with a special exception to the effect that it appeared from the allegations of the petition itself that the rents and revenues, the collection of which was so sought to be enjoined, constituted the community estate of Mrs. Adele E. Leonard and her husband, St. Clair Leonard, and by virtue of the Constitution of Texas, Article 16, Section 15, the rents and revenues of the separate estate of the wife are community property and subject to the debts of the husband, and that Article 4621, Chapter 3, Title 68, of the Revised Statutes of Texas of 1911, and the amendment thereof by the act of the regular session of the 37th Legislature, Chapter 130, Section 1, which undertakes to declare the rents and revenues of the wife's separate real property to be her separate estate is contrary to the terms of the Constitution referred to and is therefore void.

"The trial court overruled the special exception of the appellant and granted the injunction prayed for by the appellees, restraining the appellant from in any manner undertaking to have the rents and revenues from the separate real property of the appellee, Mrs. Adele E. Leonard, applied to the liquidation of the judgment so held against her husband, holding that the rents and revenues of her separate estate constituted her separate property and were beyond the reach of a creditor of the community estate of the husband and wife.

"It being obvious that the sole question involved in the case is as to the constitutionality of said Revised Statute, Article 4621, because of the importance of the question, and of some doubt entertained by different members of this court as to the correctness of the trial court's determination of it, we deem it advisable to certify for your decision the following question:

"Is the act of the legislature above stated, which declares the rents and revenues of the wife's separate real property to be her separate estate, violative of Article 16, Section 15, of our State Constitution? In this connection we call attention to the case of Rudasill v. Rudasill, 219 S. W., 843."

Later the Honorable Court of Civil Appeals submitted the following supplemental certificate, viz:

"Since filing our original certificate, which shows that the fundamental question in this case is the validity of the acts of the legislature providing that the rents and revenues derived from the separate estate of a married woman shall be her separate property, our attention has been called to the question of whether the provision of the Act of 1917, (General Laws of 35th Legislature, page 436), declaring that the rents and revenues derived from the wife's separate property shall be her separate property, or the similar provision in the Act of 1921, (General Laws, 37th Legislature, page 251), can be considered as embraced by or within the purview of the caption or title of either of said acts, as required by Section 35, Article III, of the Constitution of this State.

"We deem it advisable to certify this question for your decision, and therefore ask:

"Is the provision of the acts of 1917 and of 1921, that the rents and revenues derived from the wife's separate property shall be separate property of the wife, a valid provision in either of those statutes?"

Section 15 of Article XVI of the Constitution declares:

"All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be her separate property; and laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property as that held in common with her husband. Laws shall also be passed providing for the registration of the wife's separate property."

This section is found, without a single word changed, in the Constitutions of 1845, 1861, and 1866. Section 19, Article VII, Constitutions of 1845, 1861, and 1866, Vol. IV, Sayles' Texas Statutes, pages 209, 246, 321.

Prior to the adoption of the Constitution of 1845, the wife's separate property had been so defined by the act approved January 20, 1840 as to include the lands and slaves owned or claimed by the wife at the time of her marriage and the lands and slaves acquired by her during coverture by gift, devise, or descent, together with the increase of such slaves, and her paraphernalia.

It is undeniable that under the Act of 1840 all property other than that specifically defined as separate property of the wife was intended to belong to the separate estate of the husband or to become common property of the husband and wife. Such is the express provision of the Act. Section 19 of Article VII of the Constitution of 1845 was essentially an enlargement of the wife's separate estate. Under the Act of 1840 all the wife's right to personal property passed to the husband, with the solitary exception of slaves and their increase. Owen v. Tankersley, 12 Texas, 407; Section 66, Speer's Law of Marital Rights in Texas; 30 C. J. 530, section 52c. By the constitutional provision, *all* property, both real and personal, owned or claimed by the wife before marriage and that acquired by the wife afterwards by gift, devise, or descent, became her separate property. We can conceive of no sound reason for concluding that the terms of the Constitution of 1845 were not meant to furnish the sole measure of the wife's separate estate, as had the Act of 1840, with its less liberal provision for the wife. Whatever the language of Section 19 of Article VII meant in the Constitution of 1845, that language has the same signification in Section 15 of Article XVI of the Constitution of 1876. Muench v. Oppenheimer, 86 Texas, 570, 26 S. W., 496; Cox v. Robison, 105 Texas, 430, 150 S. W., 1149.

The plain and obvious import of the language of the Constitution is to prescribe a test by which to determine when an acquest by the

wife becomes a portion of the wife's separate estate. The test during coverture relates to the method by which the property is acquired. If the method be by gift, devise, or descent, to the wife, then the Constitution makes the property belong to the wife's separate estate. If the method of acquiring during marriage be different, then the property falls without the class of separate estate of the wife as fixed by the Constitution. We think the Supreme Court was doing no more than giving effect to the words of the Constitution when it said, through Chief Justice Willie, "But of the property which a wife may acquire during marriage, none becomes her separate estate, except such as is derived by gift, devise, or descent." Ezell v. Dodson, 60 Texas, 332.

We have no doubt that the people in adopting the Constitution in 1845, as in 1876, understood that it was intended to put the matter of the classes of property constituting the wife's separate estate beyond legislative control. Thereby both the wife and the husband were given constitutional guaranty of the status of all property derived by means of or through the wife. Our duty is plain to give effect to the people's will. Cooley's Constitutional Limitations. (7th Ed.), Page 89.

It is a rule of construction of constitutions that ordinarily when the circumstances are specified under which any right is to be acquired there is an implied prohibition against legislative power to either add to or withdraw from the circumstances specified. Koy v. Schneider, 110 Texas; 378, 218 S. W., 479, 221 S. W., 880; Dickson v. Strickland, 114 Texas, 176, 265 S. W., 1015; Ex Parte Vallandingham, 1 Wallace 252; Cooley's Constitutional Limitations, page 99; 6 R. C. L., section 43. Hence, when the Constitution says that as to property, not owned or claimed by the wife at marriage, it becomes her separate property when acquired in one of three specified modes, the Legislature is prohibited from saying that property acquired after marriage in some other mode may also become the wife's separate property.

The rule of implied exclusion is no more binding in construing statutes than in interpreting constitutions. In Howard v. York, 20 Texas, 672, in an opinion of Judge Roberts, it is said that for the Legislature to preserve to the wife's separate property increase of land and slaves "impliedly negatives the idea that the increase of any other property becomes separate property."

Had it been the purpose of the Constitution to empower the Legislature to add to the wife's separate property, it is hardly to be doubted that the power would have been conferred, when the framers of the Constitution were expressly authorizing the enactment of laws to more clearly define the rights of the wife in relation to both her separate property and community property.

It is said that expressions, such as that quoted from Howard v. York, supra, show that the Supreme Court has inferentially sanctioned

the exercise by the Legislature, since 1848, of the power to add other property than that specified in the Constitution to the wife's separate estate. So, it is contended, we ought not to override the long continued legislative interpretation of the constitutional provision.

It is true that the Act of March 12, 1848 provided that the wife's separate estate should include not only "all property, both real and personal, of the wife owned or claimed by her before marriage, and that acquired afterwards by gift, devise, or descent" but "also the increase of lands or slaves thus acquired." 3 Gammel's Laws of Texas, page 77; 2 Batts' Annotated Civil Statutes of Texas, page 262. Since the abolition of slavery, the statutes have continued to declare that the increase of lands owned or claimed by the wife before marriage and of lands acquired by her during marriage, by gift, devise, or descent, shall belong to the wife's separate estate. Art. 2851, R. S. of 1879; Art. 4621 R. S. of 1911.

Save as to increase of lands or slaves, there never was any attempt at anything like statutory enlargement of the wife's separate property until the Legislature passed the Acts of 1917 and 1921, referred to in the certificate of the Court of Civil Appeals. These latter acts undertake to add to the wife's separate property not only all property mentioned in the Constitution and increase of the wife's separate lands, but "the rents and revenues derived therefrom."

The Supreme Court at an early date determined that the increase of slaves belonged not to the owner or owners of the parents but to the owner of the mother only, regardless of dates of birth of such increase before or after the enactment of the Act of 1840 or of 1848. The decision was based on a principle of the law of slavery in the United States which forbade the inhumanity of separating a young child from the child's mother. Cartwright v. Cartwright, 18 Texas, 628, 636. Application of the principle would have given the wife's separate estate the increase of that estate's female slaves, under the constitutional provision without aid from statute.

The Court refused to hold that crops raised by labor of the wife's separate slaves on the wife's separate lands became increase of either lands or slaves or of both. De Blane v. Lynch, 23 Texas, 29. And, after slavery, crops grown on the wife's lands, with labor and money furnished wholly from her separate estate, were held to become community property. Cleveland v. Cole, 65 Texas, 405. Likewise, rents of the wife's separate lands have been consistently considered to belong to the community estate. Rhine v. Blake, 59 Texas, 243, 244; Conner v. Hawkins, 66 Texas, 639, 2 S. W., 520; Hayden v. McMillan, 4 Texas Civ. App., 479, 23 S. W., 430; Shepflin v. Small, 4 Texas Civ. App., 121, 23 S. W., 433. Nothing has ever been considered by this Court to come within the statutory phrase increase of lands unless it was such profit as may arise from the lands' own enhancement in value or such profit as may accrue from exchange of the lands for

other more valuable property. Rose v. Houston, 11 Texas, 324, 62 Am. Dec., 478; Evans v. Purinton, 12 Texas Civ. App. 158, 34 S. W., 350, with writ of error refused; Cabell v. Menczer, 35 S. W., 207, 208. It is evident that everything relating to land that has been recognized by the Supreme Court as becoming separate property of the wife is embraced within the constitutional definition of her separate property, if we bear in mind that property remains separate through all mutations and changes. The Court, through Chief Justice Stayton, was merely applying this familiar principle in saying:

"Property purchased with money the separate property of husband or wife, or taken in exchange for the separate property of either, becomes the separate property of the person whose money purchases or whose property is given in exchange, in the absence of some agreement express or implied to the contrary, and if the thing purchased or taken in exchange increases in value this necessarily inures to the benefit of the owner." Dixon v. Sanderson, 72 Texas, 362, 18 Am. St., 801, 10 S. W., 535.

With the Court declining to give effect to any attempt before 1917 at enlargement by statute of the wife's constitutional separate estate, we cannot feel bound to acquiesce in any supposed successful, long continued and unchallenged assertion of such legislative power.

Moreover, the Legislature itself seems to have considered from 1879 to 1917 that it was not undertaking to add anything to the wife's constitutional separate estate by its provision for the preservation to that estate of the increase of her lands. For, it constantly declared, between those dates, that all property "acquired by either husband or wife, during the marriage, except that which is acquired by gift, devise, or descent, shall be deemed the common property of the husband and wife." Art. 2852, R. S. of 1879, and Art. 4621, R. S. of 1911.

Since rents and revenues derived from the wife's separate lands are entirely without the constitutional definition of the wife's separate property, and since the Legislature can neither enlarge nor diminish such property, it follows that the portions of the Acts of 1917 and 1921, which undertake to make rents and revenues from the wife's separate lands a part of her separate estate, are invalid.

The Act of 1917 bore the following title:

"An Act to amend Article 4621, Chapter 32, of the General Laws of the Thirty-third Legislature of Texas, passed at the Regular Session thereof, being 'An Act to amend Articles 4621, 4622, and 4624, Title 68, Chapter 3, of the Revised Statutes of Texas, 1911, concerning the marital rights of parties, defining separate and community property of the husband and wife, conferring upon the wife the power to make contracts, authorizing suits on such contracts, giving the wife control over her separate property, placing limitations upon such control, giving her control over the rents from her separate real estate,

interest on bonds and notes, and dividends on stock owned by her, and over her personal earnings, exempting the same from debts contracted by the husband, providing that the joinder of the husband shall be necessary to a conveyance or encumbrance of the wife's lands, bonds and stocks, except that upon the order of the district court she may convey the same without the joinder of her husband, repealing Article 4625, Title 68, Chapter 3, of the Revised Statutes of Texas, 1911, and all other laws and parts of laws in conflict herewith, and declaring an emergency,' by providing that when the husband shall have permanently abandoned the wife, or shall be insane she may, upon order of the district court, encumber, transfer or convey her separate real estate, bonds and stocks, without the joinder of her husband in such encumbrance, transfer or conveyance, and by providing that in such instances, upon order of the district court, she may transfer and convey her separate real estate, without the joinder of her husband in such transfer or conveyance whether such separate real estate be occupied and claimed by her as a homestead or otherwise, repealing all laws and parts of laws in conflict herewith, and declaring an emergency.''

The caption is not content to state a purpose to amend certain statutes but proceeds to specify the nature of the proposed amendment. Thus the caption declares that the amendment consists of a provision authorizing the wife, on order of the district court, to convey her separate real estate, bonds, and stocks, without joinder by her husband, when he is insane or has permanently abandoned his wife. This language not only gives no notice of an intention to change the status of certain property from community property to the wife's separate property, but completely disguises any such intention. A caption concealing the true purpose of a statute, and stating an altogether distinct and foreign purpose, is necessarily deceptive and cannot be sustained as complying with Section 35 of Article III of the Constitution. Ward Cattle & Pasture Co. v. Carpenter, 109 Texas, 105, 200 S. W., 521.

The Act of 1921 contains the following caption:

''An Act to amend Article 4621, Chapter 3, Title 68, of the Revised Statutes of Texas of 1911, as amended by Chapter 194, Section 1 of the Acts of the Regular Session of the Thirty-fifth Legislature, by providing that the separate property of the husband shall not be subject to torts of the wife, and the separate property of the wife shall not be subject to the torts of the husband.''

An amendment introducing no other change in the law than to prevent the separate property of the husband from being applied to satisfy torts of the wife and to prevent the separate property of the wife from being applied to satisfy torts of the husband, could not possibly convert rents and revenues of the wife's separate lands from community property into the separate property of the wife. The

caption to the Act of 1921 is no less misleading and deceptive than the caption to the Act of 1917. So, neither Act could be upheld, in so far as concerns making rents and revenues from the wife's lands a part of her separate estate, even if the Legislature had been authorized to increase the wife's separate property beyond the bounds prescribed by the Constitution.

By an Act approved March 21, 1913, it was provided that "neither the separate property of the wife nor the rents from the wife's separate real estate, nor the interest on bonds and notes belonging to her, nor dividends on stocks owned by her, nor her personal earnings shall be subject to the payment of debts contracted by the husband;" and the Act committed the classes of property enumerated as exempt from payment of the husband's debts to "the control, management, and disposition of the wife alone," provided the joinder of the husband was necessary in an incumbrance or conveyance of the wife's separate lands, and in a transfer of her stocks and bonds, unless she was authorized to act alone by an order of the District Court, and provided that the husband and wife must join in a conveyance of the homestead. The Acts of 1917 and 1921 retain each and all of the above provisions of the Act of 1913.

There can be no doubt that the Act of 1913 left the rents and revenues of the wife's separate lands assets of the community estate. Red River Natl. Bank v. Ferguson, 109 Texas, 290, 206 S. W., 723; Whitney Hardware Co. v. McMahan, 111 Texas, 245, 231 S. W., 694; Scott v. Scott, 170 S. W., 273; Tannehill v. Tannehill, 171 S. W., 1051. Nor can there be any doubt that the Act of 1913 and the subsequent acts intended to exempt rents of the wife's separate lands from payment of a community debt contracted by the husband. The provision of the Acts of 1917 and 1921, declaring the exemption, is separate and distinct from the portions of the Acts undertaking to change the ownership of rents and revenues from the wife's separate lands. Hence such provision might be operative in each Act despite failure of the purpose to make the rents separate property of the wife. Western U. Telegraph Co. v. State, 62 Texas, 633.

The Supreme Court of the United States upholds the validity of legislation conferring on the wife not only the right to manage but the right to dispose of community property, so long as the husband's interest attaches to the proceeds of such property.

Speaking through Chief Justice White, the Court states its conclusions as follows:

"The legislature could as well have provided that the wife could convey, as the husband; and if it had power to say that either could dispose of the community interest of the other, it could say that neither could do so. Changing the manner of conveyance did not alter the status of ownership. It could not make the interest of either spouse in community lands greater or less.   *   *   *   "

"It is a misconception of that system to suppose that because power was vested in the husband to dispose of the community acquired during marriage, as if it were his own, therefore by law the community property belonged solely to the husband. The conferring on the husband the legal agency to administer and dispose of the property involved no negation of the community, since the common ownership would attach to the result of the sale of the property." Warburton v. White, 176 U. S., 484, 44 L. Ed., 555.

To the same effect is Arnett v. Reade, 220 U. S., 318 to 320, 55 L. Ed., 477, 36 L. R. A. (N. S.) 1040.

These conclusions harmonize with the conceptions, underlying the Texas decisions, that the wife's capacity to own and hold property is as complete as that of the husband; that each marital partner owns an estate in the community property equal to that of the other partner; and that statutes empowering the husband to manage the wife's separate lands and community assets make the husband essentially a trustee, accountable as such to the separate estate of the wife, or to the community. Edrington v. Mayfield, 5 Texas, 366 to 368; Speer's Law of Marital Rights in Texas, section 296; Richardson v. Hutchins, 68 Texas, 89; 3 S. W., 276; Dority v. Dority, 96 Texas, 224 to 226, 60 L. R. A.. 941, 71 S. W., 950; Waggoner Bank & Trust Co. v. Warren, 111 Texas, 322, 234 S. W., 387.

We see no escape from the deduction that if the Legislature may rightfully place such portions of the community as it may deem best under the wife's separate control and make same subject to disposition by her alone that it may likewise exempt the same from payment of the husband's debts, without the exemption being open to successful constitutional attack by either the husband or his creditors. It has been definitely so determined by the United States Supreme Court.

In Hitz v. National Met. Bank, 111 U. S., 730, 731, 28 L. Ed., 577, the Court considered the effect of a statute exempting separate property of the wife from payment of debts of the husband, to which it had theretofore been liable. In upholding the statute from attack by creditors whose debts were created subsequent to the enactment of the statute, the Court said:

"We are of opinion that the statute intended to exempt all property, which came to the wife by any other mode than through the husband, from liability to seizure for his debts. * * * and that in regard to such debts, created after the passage of the law, no principle of law or morals is violated by the enactment. * * * "

"What effect it might have as against an existing creditor at the time the law was passed, as impairing the obligation of a contract, we need not decide, for it does not appear that there are now any such creditors, and it appears affirmatively that the debt of the bank in this case was created nearly ten years after Congress declared that her property should not be liable for his debts.

114 Tex. Sup.—35.

"In regard to this clause of the statute and to its operation in this case, it is neither retrospective nor does it impair the obligation of a contract."

In a later case adhering to Hitz v. Bank, it was stated that the decision received careful consideration after elaborate argument. Mattoon v. McGrew, 112 U. S., 713, 28 L. Ed., 324.

The doctrine of these cases was extended to uphold the power of the Legislature to exempt rents of the wife's separate estate from liability for debts of the husband created before the immunity existed, on the ground that the rents, when the act creating the exemption was passed, "were not, at that time, in existence nor in any legal sense vested" in the husband, the Court adding that if the exemption statute did not infringe any vested right of the husband, "much less did it infringe any right belonging to his creditors." Baker's Executors v. Kilgore, 145 U. S., 490, 491, 36 L. Ed., 786. See also Parlow v. Turner, 132 Tenn., 339, 178 S. W., 767, 768.

Applying the rule announced in Baker's Executors v. Kilgore, supra, the Supreme Court of Vermont said:

"The property which the defendant seeks to hold on his execution against the husband is that product of the wife's land grown after the passage of the act by which such products were relieved from any liability for the husband debts. The defendant claims this right by virtue of a prior statute, which regulated the disposal of these annual products in a different manner. Statutes of this class rest upon the right of the State to regulate the marriage relation, and are liable to be altered whenever the good of that relation is thought to require it. It would seriously abridge this beneficent control of the State, to hold that a creditor of the husband has an interest in the prospective products of the wife's realty which cannot be taken away by legislation. Such a holding is not required by the provisions of the federal constitution. Neither the husband nor the husband's creditor has any right to the future products of the wife's real estate that is not subject to legislative control." Niles v. Hall, 64 Vermont, 455.

In Portis v. Parker, 22 Texas, 707, the Court stated that if community property was not liable, under the Act of 1840, for debts of the husband contracted before marriage, the exemption existed not on account of the wife's interest in the community property but because the Legislature declared the exemption.

The opinion of Chief Justice Phillips in Red River Natl. Bank v. Ferguson, 109 Texas, 290, 206 S. W., 923, after calling attention to the effect of the Act of 1913, in relieving certain classes of community property from liability for debts contracted by the husband, announced that "the Legislature had full authority to change the law." The Court likewise recognized the power of the Legislature to exempt rents from the wife's separate lands from the payment of debts of the husband in declaring, in Whitney Hardware Co. v. McMahan, 111

Texas, 245, 231 S. W., 694, that the Act of 1913 had the effect to render no longer subject to payment of the husband's debts "the specific items of community property confided generally to the wife's control and management, as well as her separate property." Similar conclusions upholding the exemption of the rents of the wife's separate property from payment of debts contracted by the husband, under the Act of 1913, were announced by the Courts of Civil Appeals at Fort Worth, Amarillo, Austin, and El Paso. Scott v. Scott, 170 S. W., 273; Emerson-Brantingham Implement Co. v. Brothers, 194 S. W., 609; Texas Lumber & Loan Co. v. First Natl. Bank, 209 S. W., 813; Armstrong v. Turbeville, 216 S. W., 1105.

The sum of our conclusions is: the Legislature, in defining the wife's rights in and to her separate property and property held in common with her husband, could lawfully deprive the husband of the power granted him for many years to manage and control the wife's separate property and portions of the community which were derived from use of the wife's separate property or from her personal exertions, and could confide the management, control, and disposition thereof to the wife alone, and could exempt not only her separate prrperty but said portions of the community from payment of the husband's debts. In making this grant of enlarged rights to the wife and working the corresponding diminution in rights to be exercised by the husband, the Legislature was lawfully defining the wife's rights in both her separate estate and common property, as expressly authorized by the Constitution. But, the Legislature could not divest the husband of all interest in and to property which, under the Constitution, was guaranteed either to the community or to the husband's separate estate and use the same to enlarge the wife's separate estate beyond its constitutional limits.

We, therefore, answer to the certified questions that so much of the Act of 1917 and of the Act of 1921 as undertook to declare the rents and revenues of the wife's separate realty to be her separate estate was violative of Section 15, of Article XVI, and of Section 35, of Article III of the Constitution, but that the provisions of said Acts, and of the prior Act of 1913, are valid, which render the rents and revenues of the wife's separate lands free from liability to forced sale for the payment of debts contracted by the husband.